UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ZONG LOR,

    Plaintiff,

v.                                                  Case No. 09-C-0666

DR. WILLIAM B. KELLEY, MICHAEL A. DITTMANN,
WILLIAM MCCREEDY, LAURIE BLUM, and JAMES LABELLE,

    Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(DOC. #54), DENYING PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF JAMES
LABELLE (DOC. #74), GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE
NOTARIZED AFFIDAVIT OF JAMES LABELLE (DOC. #76), AND GRANTING
PLAINTIFF'S MOTION FOR LEAVE TO FILE PAPER (DOC. #83)

Now before the court are the following motions: (1) the defendants' motion for summary judgment; (2) the plaintiff's motion to strike the affidavit of defendant James LaBelle; (3) the defendants' motion for leave to file notarized affidavit of James LaBelle; and (4) the plaintiff's motion for leave to file paper. At the outset, the court notes that it will consider the notarized affidavit of James LaBelle, as it appears that the filing of a copy of the affidavit that was not notarized was an oversight that has been corrected. Additionally, to the extent they are relevant, the court will consider the defendants' responses to plaintiff's requests for admissions that the plaintiff submitted with his motion for leave to file paper.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, — F.3d —, 2010 WL 31855, at *3 (7th Cir. Jan. 6, 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**FACTS**

**A. Medical Treatment**

While housed at Kettle Moraine Correctional Institution, the plaintiff, Zong Lor (a state prisoner), was diagnosed with and treated for prostatitis. He submitted a

2

Health Service Request (HSR) following up on a previous problem and reported "mild pain and pressure in the rectum area, to the testicles, and bladder." (Declaration of Zong Lor, Exhibit A, hereinafter "Lor Dec., Ex __"). Lor was seen by defendant Dr. William B. Kelley on June 8, 2009. Dr. Kelley did not perform a rectal examination or prescribe any medication at that time. However, he scheduled an appointment with Lor in one month.

On June 11, 2009, Lor submitted another HSR to inform Dr. Kelley "that the pain and pressure in [his] lower stomach is now a burning sensation in the prostate area ...." (Lor Dec., Ex. C). He reported that he could feel nerve and muscle spasms in the urethra and that the burning sensation was very uncomfortable. Lor asked to be seen as soon as possible. A nurse responded to Lor and told him that he was to be seen by a doctor in one month and that he should keep track of his chronic pain until then.

The next day, Lor was suffering from excruciating pain. At approximately 12:30 p.m., he asked a sergeant to call the Health Services Unit (HSU). A nurse advised that Lor should put a bag with warm water in it on his scrotum, but that did not help. By 4:40 p.m., Lor could not stand up for count and the unit sergeant called for an emergency medical response. Lor saw two nurses in the HSU, one of whom was defendant Laurie Blum. After an assessment, Lor was sent to the hospital emergency room in a state vehicle. In the emergency room, the doctor performed a rectal exam and diagnosed Lor with abdominal pain, a urinary tract infection, and prostatitis. The doctor prescribed antibiotics and oral pain relief medication.

Dr. Kelley saw Lor on June 15, 2009. He reviewed the records from the emergency room and continued the prescribed antibiotic. Dr. Kelley also performed a rectal exam and a urinalysis, and the findings led him to conclude that Lor's June 12, 2009, prostatitis was resolving nicely.

On June 16, 2009, Lor submitted a HSR asking for a refill of pain medication. Dr. Kelley signed a response indicating that another doctor provided a prescription for 400 mg Ibuprofen as needed. Dr. Kelley saw Lor on June 22, 2009, assessed that his prostatitis was continuing to improve, extended Lor's antibiotic for an additional week, and drew a PSA test (for Lor's prostatic specific antigen).

Lor wrote a HSR on June 29, 2009, when he was almost out of the antibiotic, asking to be seen by a doctor. He was told that he was on the list for a week from that date and advised to give it a little more time. Lor submitted another HSR on July 2, 2009, complaining that he still had multiple symptoms even though he had completed his medication. Dr. Kelley saw Lor on July 3, 2009. According to Lor, Dr. Kelley did not perform a physical or rectal examination, but prescribed a new antibiotic. He also scheduled a follow up urinalysis and addressed Lor's concern regarding his weight by ordering weight checks every two weeks. The follow up urinalysis was conducted on July 16, 2009, and the results were normal.

Lor submitted HSRs on July 19, 2009, July 21, 2009, and July 27, 2009, asking for medication and a follow-up examination. His follow up appointment was scheduled with Dr. Kelley for July 29, 2009. However, Lor was in the library on that date and was not called for his appointment. When he asked the librarian to call the HSU about it, defendant Blum stated that the HSU had called Lor and he was a no show. Lor

returned to his housing unit and asked a guard to call HSU. Blum advised the guard that there were no doctors available. According to Lor, Blum also told the guard that Lor could not come to the HSU because there was nothing wrong with him.

On August 5, 2009, Lor met with defendants Dr. Kelley and William McCreedy, the Health Services Manager at KMCI. Lor asked for a referral to a urologist, and his request was denied. When they were done talking, McCreedy left the room. Dr. Kelley performed a rectal exam and found no evidence of prostatitis. Lor reported discomfort during the exam and was tearful, but Dr. Kelley felt no enlargement or bogginess in the prostrate. Based on Lor's discomfort and upset, Dr. Kelley ordered a number of tests and labs, including a kidney and bladder ultrasound. Dr. Kelley also referred Lor for psychological services evaluation to help him with his coping skills. Dr. Kelley reviewed the results of the labs on August 7, 2009, and they were all normal or negative. Similarly, Lor's August 13, 2009, ultrasound was "unremarkable." (Affidavit of William B. Kelley, M.D., ¶23). According to Lor, Dr. Kelley spoke with his sister on August 14, 2009, and then made notes in Lor's chart, but Dr. Kelley's affidavit does not reference that conversation.

In August 2009, Lor had a consultation with Dr. Pam Baker of the Department of Corrections' psychological services unit. Dr. Baker's August 12, 2009, report noted that Lor "did appear to be overreacting to his current medical situation, even though he is young and his medical problem involved his male anatomy." (Lor Dec., Ex. 57-B). She also found that Lor "appeared to be slightly obsessed about his current medical problem," but did not qualify for an Axis I mental illness diagnosis at that

5

time. *Id.* However, later Dr. Baker diagnosed Lor as having a personality disorder with antisocial features and an anxiety disorder.

Lor submitted HSRs on August 17, 2009, August 24, 2009, and August 25, 2009, and was advised of an appointment on August 26, 2009. Dr. Kelley saw Lor on August 27, 2009, regarding complaints of prostate pain. The exam was unremarkable, and the score sheet used to evaluate prostate symptoms indicated mild symptoms. Nevertheless, Dr. Kelley prepared a Prior Authorization for Therapeutic Level of Care form asking the DOC Medical Review Committee that Lor receive a rectal ultrasound of the prostate. Dr. Kelley also ordered tests of Lor's thyroid on August 31, 2009, but all results came back within normal limits.

The committee, chaired by Dr. Scott Hoftiezer, denied Dr. Kelley's request on September 2, 2009, but recommended a six week trial of Cipro antibiotic with up to an additional six weeks of treatment. Afterward, Dr. Kelley prescribed six weeks of Cipro for Lor, commencing on September 3, 2009. On October 18, 2009, Lor submitted a HSR indicating that his six week trial was done and that his symptoms had improved slightly. At their final appointment on October 21, 2009, Dr. Kelley noted that Lor's symptoms appeared to be improving and prescribed six more weeks of Cipro antibiotic treatment.

On December 2, 2009, Lor asked to see a doctor because he had finished his second six week course of antibiotic and was still experiencing symptoms. However, Lor was transferred shortly thereafter.

**B. Complaints**

Lor filed four Offender Complaints regarding the medical treatment he received for his prostatitis, one on June 16, 2009, two on July 29, 2009, and one on August 7, 2009. Each complaint was exhausted and dismissed by the Office of the Secretary. In each case, defendant James LaBelle was the institution reviewer who dismissed the complaint after inmate complaint examiner (ICE) Kelly Salinas investigated and dismissed them.

Lor submitted an interview/information request to defendants William McCreedy and Warden Michael Dittmann on June 18, 2009. He reported that he still had symptoms of acute prostatitis and asked for a referral to a different doctor at the prison and an infectious disease specialist. McCreedy responded on June 22, 2009, and Lor was seen that day by McCreedy and Dr. Kelley who noted improving symptoms. Lor was told to follow up with the HSU in one week if his symptoms had not resolved.

On July 29, 2009, Lor submitted another interview/information request regarding his medical care. He also wrote a letter to Warden Dittmann indicating that he still had symptoms and asking to be seen by a specialist. Lor wrote an additional letter to Secretary Rick Raemisch and Bureau of Health Services Director James Greer. Warden Dittmann responded by informing Lor that it is the physician who determines course of treatment.

On August 2, 2009, Lor provided Warden Dittmann with a proposed Agreement and referral to a specialist. McCreedy responded that he was unable to sign or enter the proposed Agreement and encouraged Lor to continue working with the DOC medical staff.

Lor sent McCreedy yet another interview/information request on August 6, 2009, requesting a referral to a urologist and advanced testing. McCreedy responded that the issue was addressed at Lor's last appointment on August 5, 2009. This was followed by an additional interview/information requesting McCreedy address Lor's unresolved health problem. Lor submitted similar interview/information requests to Warden Dittmann on August 17, 2009, August 23, 2009, and August 24, 2009. After the final request, defendant McCreedy responded: "Record review indicates medical staff are working with you to resolve your medical concerns. Please continue to work with them in an attempt to resolve your health issues." (Lor Dec., Ex. 40).

**ANALYSIS**

The defendants argue that they are entitled to summary judgment because Dr. Kelley was not deliberately indifferent to Lor's medical condition and that there is no basis for a medical malpractice claim against him. They also submit the facts do not support a deliberate indifference claim against defendant Laurie Blum and that Lor's claims against the other defendants should be dismissed.

In response, Lor maintains that Dr. Kelley failed to diagnose and provide treatment for his prostatitis and was deliberately indifferent as well as medically negligent. Lor further contends that defendants William McCreedy and Michael Dittmann turned a blind eye towards the inadequate medical care rendered by Dr. Kelley. Finally, Lor maintains that defendant James LaBelle was deliberately indifferent because he reviewed and read all of his complaints then dismissed them without any investigation. Lor's brief does not address his claim against defendant Blum.

In their reply brief, the defendants suggest that Lor wants to argue about the decisions that were made with regard to his care rather than determine whether the defendants were deliberately indifferent to his serious medical need.

In *Duckworth v. Ahmad*, 532 F.3d 675, 678-79 (7th Cir. 2008), the court set forth the legal standard for Eighth Amendment medical care claims:

> The states have an affirmative duty to provide medical care to their inmates. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). And the upshot of this duty is that the "deliberate indifference to [the] serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" and violates the Eighth Amendment's prohibition against cruel and unusual punishments. *Id.* at 104, 97 S.Ct. 285. To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts. *Id.* And although deliberate means more than negligent, it is something less than purposeful. *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The point between these two poles lies where "the official knows of and disregards an excessive risk to inmate health or safety" or where "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he ... draw[s] the inference." *Id.* at 837, 114 S.Ct. 1970. A jury can "infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

The defendants concede, for the purposes of summary judgment only, that Lor's prostate condition between June and October of 2009 constituted a serious

medical need. Thus, the court considers whether the defendants were deliberately indifferent to the plaintiff's serious medical need.

## A. Dr. William B. Kelley

Dr. Kelley saw Lor at least seven times between June and October of 2009, and spent additional time on Lor's case ordering tests, reviewing results, prescribing medications, and referring Lor for a psychological consultation. Moreover, Dr. Kelley responded to Lor's complaints and increased treatment modes when Lor's symptoms continued. This culminated with Dr. Kelley's requesting the Medical Review Committee to approve a rectal ultrasound. Notably, Lor's narrative concerning his treatment omitted a number of his follow up appointments with Dr. Kelley. He also minimized the treatment provided by Dr. Kelley, which is documented in his medical records.

Lor focuses on Dr. Kelley's failure to perform a rectal exam on June 8, 2009, the first time he complained of pain and was seen in the HSU for this problem. Dr. Kelley determined that a rectal exam was not necessary at that time. That Lor had severe pain and was taken to the emergency room four days later, on June 12, does not mean that a rectal exam was required on June 8. Lor's symptoms were not as severe on June 8 as they were on June 12, and no reasonable jury could conclude that Dr. Kelley's course of action was deliberately indifferent, or even medically negligent in light of the overall course of treatment Lor received for his prostatitis at KMCI.

Lor presents evidence of his medical treatment since leaving KMCI, as well as a medical opinion. However, that evidence does not impact the court's analysis of whether the defendants were deliberately indifferent to Lor's serious medical needs.

Although, Lor continues to disagree with medical professionals regarding treatment while incarcerated, such disagreements do not support Eighth Amendment claims under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

With regard to Lor's medical negligence claim against Dr. Kelley, the expert report he submitted is not properly before the court and will not be considered. *See* Fed. R. Civ. P. 26(a)(2)(B). Thus, Lor has not presented evidence sufficient to create a material issue of fact regarding whether Dr. Kelley was medically negligent in treating Lor on June 8.

## B. Laurie Blum

As the defendants noted in their reply brief, Lor seems to have conceded his claim against Laurie Blum because he does not mention her in his response brief. Nevertheless, as the defendants argued, the record does not support Lor's claim of deliberate indifference by Blum. On July 29, 2009, Blum simply conveyed information on the telephone regarding Lor's missed appointment. Moreover, when Lor was treated by Blum on June 12, she quickly made the decision to send him to the emergency room for treatment.

## C. Michael Dittmann and William McCreedy

Lor made defendants Dittmann and McCreedy aware of his medical condition and his complaints regarding the treatment he was receiving. However, each time these defendants investigated Lor's treatment, they were assured that his medical needs were being met.

As administrators, Dittmann and McCreedy were justified in relying on the judgment of medical professionals, and cannot not be liable for deferring to the judgment in the absence of clear evidence to the contrary. *Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008). Lor points out that McCreedy is a nurse by profession. However, as an administrator, he was not providing Lor with medical care.

**D. James LaBelle**

Similarly, defendant James LaBelle was entitled to defer to the judgment of medical professionals. *See id.* However, the claim against LaBelle is not that he knew about Lor's medical condition and did nothing to intervene. Lor contends that LaBelle violated his constitutional rights by failing to investigate his complaints before dismissing them. Lor suggests that LaBelle could have made a few phone calls or sent an e-mail to discharge his statutory duty to resolve inmate complaints.

Wisconsin Administrative Code DOC 310.12 details the duties of the reviewing authority. Within receipt of a recommendation from an ICE, the reviewing authority has 10 working days to decide whether to dismiss the complaint, dismiss the complaint with modifications, affirm the complaint, affirm the complaint with modifications, or return the complaint to the ICE for further investigation. Wis. Admin. Code § DOC 310.12(1) and (2). Investigation is something the ICE must do before making a recommendation (and ICE Kelly Salinas' response to each of Lor's four complaints reveal that she contacted medical personnel and investigated Lor's claims before making a decision). Regardless, it is not the statutory duty of the DOC's reviewing authority to independently investigate offender complaints. Therefore,

IT IS ORDERED that the defendants' motion for summary judgment (Docket #54) is GRANTED.

IT IS FURTHER ORDERED that the plaintiff's motion to strike the affidavit of defendant James LaBelle (Docket #74) is DENIED.

IT IS FURTHER ORDERED that the defendants' motion for leave to file notarized affidavit of James LaBelle (Docket #76) is GRANTED.

IT IS FURTHER ORDERED that the plaintiff's motion for leave to file paper (Docket #83) is GRANTED.

Dated at Milwaukee, Wisconsin, this 14th day of March, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge